UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MICHAEL LEE CATANZARO,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1]<br><br>Defendant. | NO. C16-5855-JPD<br><br><br>ORDER AFFIRMING THE COMMISSIONER |

Plaintiff Michael Lee Catanzaro appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Commissioner's decision is AFFIRMED.

---

[1] Nancy A. Berryhill is now the Acting Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted for Carolyn W. Colvin as defendant in this suit. The Clerk is directed to update the docket, and all future filings by the parties should reflect this change.

ORDER - 1

# I. FACTS AND PROCEDURAL HISTORY

At the time of the administrative hearing, plaintiff was a forty-eight year old man with a high school education. Administrative Record ("AR") at 51. His past work experience includes employment as a garbage collection driver, hazardous waste coordinator, and salvager. AR at 81. Plaintiff was last gainfully employed as a garbage collection driver for a recycling company in 2000. AR at 52.

On March 22, 2013, plaintiff filed a claim for SSI payments and DIB, alleging an onset date of March 15, 2009. AR at 20. During the administrative hearing, plaintiff amended his alleged onset date to September 1, 2013. AR at 50. Plaintiff asserts that he is disabled due to degenerative disc disease, depression, non-obstructive coronary artery disease, diabetes, hypertension, hyperlipidemia, morbid obesity, fatty liver, mild asthma, sleep apnea, and tobacco use disorder. AR at 50-51, 59.

The Commissioner denied plaintiff's claim initially and on reconsideration. AR at 20. Plaintiff requested a hearing, which took place on November 5, 2014. AR at 42-86. On April 24, 2015, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on her finding that plaintiff could perform a specific job existing in significant numbers in the national economy. AR at 17-36. Plaintiff's request for review was denied by the Appeals Council, AR at 1-7, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). On October 6, 2016, plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. 1.

# II. JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

III.  STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

# IV. EVALUATING DISABILITY

As the claimant, Mr. Catanzaro bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[2] If he is, disability benefits are denied. If he is not, the Commissioner proceeds to step two. At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities. If the claimant does not have such impairments,

---

[2] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

ORDER - 4

he is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether he can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

V. DECISION BELOW

On April 24, 2015, the ALJ issued a decision finding the following:

1. The claimant meets the insured status requirements of the Social Security Act through [***].

2. The claimant has not engaged in substantial gainful activity since [***] the alleged onset date.

3. The claimant has the following severe impairments: [***]

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

ORDER - 5

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b. [***].

6. The claimant is unable to perform any past relevant work.

7. The claimant was born on XXXXX, [***] and was [***] years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.[3]

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from [***], through the date of this decision.

AR at 22-36.

## VI. ISSUE ON APPEAL

The sole issue on appeal is:

1. Did the ALJ commit harmful by rejecting the opinion of consultative examiner Gary Gaffield, DO, that plaintiff can only perform occasional manipulative activities with his right upper extremity?

Dkt. 9 at 1; Dkt. 12 at 5.

---

[3] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

ORDER - 6

## VII. DISCUSSION

### A. The ALJ Did Not Commit Harmful Error in Evaluating the Medical Opinion Evidence

#### 1. Standards for Reviewing Medical Evidence

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his/her conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining

physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

### 2. Gary Gaffield, D.O.

Plaintiff contends that the ALJ erred in evaluating the July 17, 2013 opinion of consultative medical examiner Dr. Gaffield. Dkt. 9 at 3. Dr. Gaffield opined that plaintiff could only "occasionally" perform manipulative activities due to weakness in the right upper extremity. AR at 849-55. Specifically, Dr. Gaffield stated that his examination "revealed weakness involving the entire right upper extremity, most noticeable was impaired grip. Dexterity was intact, however. He was able to shuffle cards and sort coins." AR at 853. As a result, Dr. Gaffield opined that manipulative activities "can be performed occasionally, limited by the weakness of his right upper extremity." AR at 855.

The ALJ acknowledged Dr. Gaffield's opinion, including his limitation to only occasional "manipulative activities on the right." AR at 32. The ALJ also stated that she gave Dr. Gaffield's opinion "some weight" because it is "generally consistent with the overall medical evidence of record," although the ALJ rejected his "finding regarding the standing

walking limitations" based on inconsistencies with plaintiff's daily activities. AR at 33. The ALJ did not indicate that she was also rejecting Dr. Gaffield's opinion that plaintiff can only occasionally perform manipulative activities on his right. AR at 32-33. This omission was significant, because Dr. Gaffield's opinion conflicted with the ALJ's RFC assessment, which allows for frequent manipulation (fingering) with the right upper extremity. AR at 26 ("He can frequently finger with the right upper extremity.").

Plaintiff alleges that the ALJ erred by failing to provide any explanation for why this "significant probative evidence has been rejected." Dkt. 9 at 3 (quoting *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984)).[4] Plaintiff contends that "an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." Dkt. 9 at 3 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1012-13 (9th Cir. 2014)). *See also* 20 C.F.R. § 404.1545(b) (providing that a limited ability to perform "physical functions (including manipulation, may reduce [a claimant's] ability to perform past work and other work.").

The Commissioner responds that the ALJ did not err because she specifically acknowledged Dr. Gaffield's opinion regarding only occasional manipulative activities, AR at 32, and it can be inferred from the ALJ's decision that she was rejecting this aspect of Dr. Gaffield's opinion. Dkt. 12 at 5-6 (citing *Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) ("Even when an agency explains its decision with less than ideal clarify, [the reviewing court] must uphold it if the agency's path may reasonable be discerned.")). The ALJ stated

---

[4] Plaintiff asserts that Dr. Gaffield's opinion was supported by his objective clinical findings, which showed right upper extremity weakness with impaired grip, absent biceps DTR, and reduced motor on the right in grip, wrist, elbow, and shoulder. Dkt. 9 at 3.

ORDER - 9

that she was giving Dr. Gaffield's opinions "some weight," AR at 33, but the ALJ gave significant weight to the opinions of State agency consultant Guillermo Rubio, M.D., who found that the only manipulative limitation plaintiff had involved "frequent fingering due to some decreased grip strength" on the right hand with intact dexterity. AR at 33, 129. The Commissioner asserts that the ALJ reasonably concluded that Dr. Rubio's opinion regarding manipulative limitations was consistent with the overall medical evidence of record, as other examining physicians in July and August 2013 found plaintiff had normal strength except for slightly reduced grip strength on the right. AR at 33 (citing AR at 29, 31, 826, 878).

The Commissioner argues that even if the ALJ erred by failing to explicitly state that she was accepting the opinion of Dr. Rubio over Dr. Gaffield, any such error was harmless because it is inconsequential to the determination that plaintiff is not disabled. Dkt. 12 at 7 (citing *Molina*, 674 F.3d at 1115). The Commissioner asserts that even if the ALJ had limited plaintiff to occasional fingering with his right hand, plaintiff could still perform two of the three jobs identified by the ALJ at step five, cleaner/housekeeping and cleaner/polisher, according to the Dictionary of Occupational Titles. *Id.* at 8 (citing AR at 35-36, Finding 10). Thus, the Commissioner argues that these two jobs are consistent with Dr. Gaffield's assessed manipulative limitations, and any error by the ALJ was harmless. *Id.*

Plaintiff does not have a persuasive response to the Commissioner's harmless error argument. Specifically, he contends that the ALJ's alleged error in assessing plaintiff's manipulative impairments "may reduce an individual's ability to perform either past or other work at steps 4 and 5." Dkt. 9 at 4. However, plaintiff does not discuss the DOT definitions for the remaining two occupations of cleaner/housekeeping and cleaner/polisher, which were identified by the vocational expert as representative occupations plaintiff could perform despite his limitations. Instead, plaintiff simply argues that the Commissioner's "citation to the record

. . . for this proposition" is inadequate and "the Court should reject this naked assertion." Dkt. 13 at 4.

As a threshold matter, the Court agrees with plaintiff that the ALJ erred by failing to provide a specific and legitimate reason for rejecting the manipulative limitations assessed by Dr. Gaffield. The Court is loath to intuit what the ALJ must have been thinking in weighing conflicting medical evidence, as it is an ALJ's obligation to explain why significant, probative medical evidence has been rejected. This is particularly true in a situation like this one, where the ALJ apparently rejected the opinion of an examining physician in favor of a non-examining physician but gave no reason for doing so. If the ALJ wished to reject Dr. Gaffield's opinion that plaintiff can only occasionally finger with his right extremity, she should have articulated her specific and legitimate reasons for reaching this conclusion. Although the ALJ erred, however, the Court finds that the error was harmless in this case because it did not affect the ultimate disability determination.

"[T]he best source for how a job is generally performed is usually the Dictionary of Occupational Titles [DOT]." *Pinto* v. *Massanari*, 249 F.3d 840, 845-46 (9th Cir. 2001) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995)). The DOT raises a rebuttable presumption as to job classification. *Johnson*, 60 F.3d at 1435-36 (9th Cir. 1995).[5] During the administrative hearing, the vocational expert ("VE") identified three representative occupations that plaintiff could perform despite his limitations, based upon a limitation to "frequent fingering with the right upper extremity." AR at 82-83. Those jobs were cleaner housekeeping (DOT

---

[5] Pursuant to Social Security Ruling (SSR) 00-4p, an ALJ has an affirmative responsibility to inquire as to whether a VE's testimony is consistent with the DOT and, if there is a conflict, determine whether the VE's explanation for such a conflict is reasonable. *Massachi v. Astrue*, 486 F.3d 1149, 1152-54 (9th Cir. 2007). The parties do not dispute that the ALJ properly inquired as to the consistency of the VE's testimony with the DOT in this case. AR at 85.

ORDER - 11

323.687-014), inspector hand packager (DOT 559.687-074), and cleaner polisher (DOT 709.687-010). The ALJ ultimately adopted the VE's testimony, and relied upon it to find plaintiff not disabled at step five. AR at 35-36. This Court's review of the DOT definitions of the occupations of cleaner/housekeeping (DOT 323.687-014, 1991 WL 672783) and cleaner/polisher (DOT 709.687-010, 1991 WL 679134) confirm that both require only *occasional* fingering, rather than frequent. As a result, even if the ALJ had adopted Dr. Gaffield's opinion that plaintiff was limited to only occasional fingering, plaintiff would still be able to perform these two jobs identified by the VE that exist in significant numbers in the national economy. Accordingly, the ALJ's error in evaluating Dr. Gaffield's opinion was harmless. *See Molina*, 674 F.3d at 1116.

## VIII. CONCLUSION

The role of this Court is limited. As noted above, the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews*, 53 F.3d at 1039. When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Thomas,* 278 F.3d at 954. While it may be possible to evaluate the evidence as plaintiff suggests, it is not possible to conclude that plaintiff's interpretation is the only rational interpretation. For the foregoing reasons, the Commissioner's decision is AFFIRMED.

DATED this 13th day of April, 2017.

JAMES P. DONOHUE
Chief United States Magistrate Judge